UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Miami Division

Case No. 05-CR-20893-GRAHAM/GOODMAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANNY DAVIDSON,

    Defendant.
_____/

**ORDER ACCEPTING DAVIDSON'S**

**<u>WAIVER OF CONFLICT-FREE COUNSEL</u>**

This matter is before the Court regarding Defendant Davidson's objections to my Post-*Garcia* Hearing Order Refusing to Accept Defendant's Waiver of Conflict-Free Counsel and the District Court's referral-remand to the Undersigned to consider those objections in light of new arguments and alleged mistakes of fact which the parties claimed had been made in the initial Order. (DE# 920.)

In light of the new information presented to me for the *first time* in those objections and at yesterday's hearing, the Court's previous order (DE# 920) is hereby **VACATED** in part, as described below, and the Court concludes that Defendant's waiver of conflict-free counsel was knowing, voluntary, and intelligent, and the Court **ACCEPTS** Defendant's waiver of conflict-free counsel.

    **I.**    **INTRODUCTION AND ANALYSIS**

The Sixth Amendment to the United States Constitution provides that: "In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his

defense." "When an actual conflict of interest exists, the client is denied effective assistance of counsel, and the attorney may be disqualified." *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994). An actual, direct conflict exists where counsel "has previously represented a person who will be called as a witness against a current client at a criminal trial." *Id.* But a criminal defendant may waive this protection and elect to proceed with conflicted counsel so long as his waiver is "knowing, intelligent and voluntary." *United States v. Garcia*, 447 F.3d 1327, 1337 (11th Cir. 2006).

Defendant Davidson is currently represented by an attorney who also represents a co-defendant, Eric Gardiner, in this case. When the parties filed a joint request for a *Garcia* hearing, the government was considering, but had not yet decided to file, a Rule 35 motion on the co-defendant's behalf. As a result, this matter was originally referred to me by the District Court for a *Garcia* hearing to determine if Defendant was willing to waive his right to conflict-free counsel and, if so, whether that waiver should be accepted. (DE# 900.)

During the first *Garcia* hearing that I held, Defendant stated that he understood the issues involved and wished to waive his right to conflict-free counsel. Nevertheless, in a written order dated July 15, 2011, I concluded that Defendant's waiver should be declined because it was neither knowing nor intelligent. At this hearing, Defendant said he believed he was at the hearing to enter a guilty plea. He also revealed that he had completed school only through the ninth grade. Alternatively, I also concluded that, even if Defendant's waiver were knowing and intelligent, the Court would exercise its discretion and refuse to accept Defendant's waiver because of the dramatic nature of the actual and potential conflicts. (DE# 904.)

The District Court referred/remanded this matter to me again to consider Davidson's objections to my order, what Defendant characterizes as "new issues that were not addressed during the Garcia hearing" and what the government refers to as my "misunderstanding of facts." (DE# 920.)

As outlined below, however, some of the "new" facts are actually different from (and sometimes contrary to) the previous explanations provided by counsel. To the extent the Court misunderstood the facts, that so-called misunderstanding flowed primarily from omissions or misstatements from counsel.

My original conclusion to not accept the waiver was, in large part, based upon representations by defense counsel (Troy Ferguson) and the government (AUSA Adam Fels) that (1) should the case go to trial, the co-defendant would testify against Davidson, (2) the government previously specifically questioned the co-defendant about Davidson, (3) the co-defendant may know relevant information about Davidson's criminal activities, and (4) the co-defendant has not yet earned a Rule 35 motion and his cooperation against Davidson may factor into whether the government makes such a motion. Also persuasive to me was that the United States Supreme Court has recognized, on very similar operative facts also involving illegal drug crimes, that it is unethical for an attorney to simultaneously represent co-defendants if one co-defendant testifies against the other. *See United States v. Wheat*, 486 U.S. 153,164 (1988).

Some of the specific exchanges between the Court and counsel at the first hearing regarding these issues were as follows:

> The Court:   And, Mr. Fels, what is the government's position? Do you also share Mr. Ferguson's view that there is no conflict, actual or potential, arising from his representation of

3

|               |                                                                                                                                                                                                                 |
| ------------- | --------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|               | Mr. Gardiner for Rule 35 purposes and his current representation of Mr. Davidson in the underlying criminal case?                                                                                               |
| Mr. Fels:     | Judge, it is a little bit complicated. Let me explain what it is that we know at this point. **Mr. Gardiner would be a witness against Mr. Davidson.**                                                          |
|               | . . .                                                                                                                                                                                                           |
| The Court:    | . . . So, Mr. Ferguson, what is the status of the Rule 35 motion with Mr. Gardiner? Has that yet been filed by the government?                                                                                  |
| Mr. Ferguson: | Not as yet, Your Honor. **After** the conclusion of Mr. Davidson's prosecution, at some point the government will file the Rule 35.                                                                             |
| . . .         |                                                                                                                                                                                                                 |
| The Court:    | . . . So, as we sit here today, in the middle of July and there has not yet been a plea deal arrangement finalized with Mr. Davidson, **has Mr. Gardiner provided information to the government against Mr. Davidson?** |
| Mr. Ferguson: | Prior to Mr. Davidson's extradition to the United States, before I was ever involved in the case, maybe 5 years ago, **Mr. Gardiner was asked several questions regarding Mr. Davidson**, but he was never fully debriefed regarding Danny Davidson. |

(DE# 905-1, 7:3-10; 10:9-17 (emphasis added).)

At this first hearing, the government also represented that should the parties reach a plea agreement, "the facts, at least that we know at this point about what Eric Gardiner would say, would be in the factual proffer" and reiterated its concern that the co-defendant "has an awful lot to lose at this point" if he holds anything back regarding Defendant. (*Id.* at 12:4-6; 24:17-25:1-2.)

4

Despite my order declining to accept Defendant's waiver, which was based upon the only information provided to me by counsel at the hearing, defense counsel apparently continued his full representation of Defendant. The parties also went ahead and negotiated a plea agreement (which was signed weeks after my Order refusing to accept the waiver) and attempted to move forward with a change of plea hearing before the District Court. The parties then made certain statements to the District Court regarding the *Garcia* hearing and the arguments they claimed to have presented to me during that hearing. The pertinent portions of the hearing before the District Court are as follows:

> Mr. Ferguson: . . . Mr. Davidson was awaiting extradition and retained me to work - - because he had decided, based upon his review of the extradition materials and the wiretap transcripts, et cetera, and the witness statements, Mr. Davidson **made a decision with his own independent counsel in Jamaica** that he wanted to plead guilty and he wanted to fashion the best possible deal and **that's why he retained me**.
>
> The magistrate hypothetically posed the circumstance whereby the other defendant that I'm representing would be testifying against Mr. Davidson and that was a conflict, but **we represented to the magistrate** that there was not going to be a trial, **that Mr. Davidson made his own independent decisions in Jamaica with independent counsel and advisors**, and that the hypothetical conflict situation was not enough under Eleventh Circuit law to vitiate my representation of Mr. Davidson.
>
> . . .
>
> The Court: Did you present that argument to Judge Goodman?

5

>Mr. Ferguson: **Yes, I did**.
>
>. . .
>
>The Court: What about this Rule 35 scenario that Judge Goodman raised?
>
>Mr. Fels: Your honor, Mr. Gardiner would be getting a Rule 35 regardless of the circumstances. **Mr. Gardiner has already earned, as we explained, a Rule 35 based on other conduct that he's done** . . . I think one of the issues that was in the magistrate's decision, and it may have just been a misunderstanding, I believe that there was some sort of an allegation in the order, or an assertion in the order that somehow Mr. Davidson's information led to Mr. - - sorry, Mr. Gardiner's information somehow led to Mr. Davidson's capture or case against him, and that is not correct."

(DE# 920, 4:15-5:16; 7:15-8:6 (emphasis added).)

A review of the *Garcia* hearing transcript reveals that, contrary to his affirmative representation to the District Court, defense counsel **never** informed me that Defendant originally made the decision to accept extradition and to plead guilty based upon the advice and assistance of independent Jamaican counsel while Defendant was still in Jamaica. Defense counsel never advised me at the first *Garcia* hearin*g* that Davidson had *already* decided to enter a guilty plea in the instant case before he ever met Mr. Ferguson and never advised me that Defendant Davidson retained him for the primary purpose of implementing his **previously made decision to enter a guilty plea.** Defense counsel reviewed the entire transcript of the first hearing during a recess in yesterday's hearing and conceded that, contrary to his explanation to Judge Graham, he had not given me the explanation about the independent advice his client obtained from separate criminal defense counsel.

6

A comparison of the two hearing transcripts demonstrates that defense counsel and the government told two very different tales to me and to the District Court.

The AUSA represented at the *Garcia* hearing that the co-defendant was previously questioned regarding Defendant, suggested that the co-defendant may be aware of facts damaging to Defendant's case, and represented that the co-defendant was still providing the government assistance in an effort to obtain a Rule 35 motion, which might include testifying against Defendant if a trial is necessary. When before the District Court, however, both the AUSA and defense counsel made representations which (1) were either completely opposite to, or significantly different from, the ones made to me, (2) did not clarify for the District Court that they were making different or opposite representations, and (3) with regard to the extremely significant pre-extradition decisions to enter a guilty plea, affirmatively misrepresented to the District Court that this fact was offered to me in support of a conflicts waiver.

At yesterday's hearing, defense counsel and the government acknowledged that many of the so-called "new issues" and "misunderstandings" were, in fact, not originally presented to me and that their representations to Judge Graham were inaccurate. Defense counsel, however, characterized his misstatement (i.e., that he had advised me that Davidson decided to enter a guilty plea because of consultations with independent criminal defense counsel and other advisors and family members in Jamaica) as merely an "inadvertent misrepresentation." Defense counsel, Mr. Ferguson, begrudgingly conceded the "inadvertent misrepresentation" and tried to argue around the critical fact that his statement to Judge Graham was false. The fact is, whether or not this misrepresentation was "inadvertent," it was **significant.**

This significance flows from the fact that defense counsel's conflict or potential conflict is far-less serious than the Court imagined because Defendant *already* decided to plead guilty before retaining American defense counsel.  Therefore, his prior decision to avoid a trial demonstrates that his counsel's multiple representation does not concern him and that Mr. Ferguson's dual representation played no role in his **prior** decision to enter a guilty plea.

Moreover, at yesterday's hearing, defense counsel conceded (as he must) that the facts he omitted and failed to disclose at the first hearing (i.e., the ones he incorrectly advised Judge Graham had been explained to me) are, in fact, significant.

Concerning the prosecutor's position, he advised me *yesterday* that he has now reviewed the written reports and has now determined that the co-defendant's debriefing reports do **not** contain allegations which Gardiner made against Davidson, that Gardiner's affidavit was not submitted in support of the government's extradition request against Davidson, that he does not know if Gardiner would even have the ability to truthfully provide damaging evidence against Davidson at trial should Davidson change his mind about a plea[1] and that the co-defendant had *already* earned his Rule 35 motion based on cooperation against others.  Thus, the AUSA's representations made yesterday are either contrary to his prior explanations, different from those made at the first hearing or constitute new information.[2]

---

[1]    At the first *Garcia* hearing, AUSA Fels advised that "Mr. Gardiner would be a witness against Mr. Davidson."  (DE# 906, 7:10).  Similarly, Mr. Ferguson also explained then that "I do anticipate that the Government would call Mr. Gardiner to testify at trial" if there were a trial."  (DE# 906, 11:1-3).

[2]    The AUSA also advised the Undersigned yesterday at the hearing that he did not correct defense counsel's affirmative misstatement to Judge Graham (about having advised the Undersigned about his client's consultations with other attorneys and

Counsel's omissions and misstatements aside, I have determined that the information *now* presented to me supports a reversal of my original determination. The information provided at yesterday's hearing and in Defendant's post-*Garcia* hearing submissions (e.g., an affidavit) suggests that Defendant is likely more than capable of understanding the import of a conflicts waiver and that it is appropriate for the Court to accept that waiver.

Part of the reason I originally determined the waiver was neither knowing nor intelligent was a concern that Defendant appeared confused at the *Garcia* hearing. But defense counsel represented yesterday, and Defendant confirmed, that Defendant previously ran several of his own businesses and supervised as many as twenty-five people at a time. The fact defendant was able to accomplish these feats, along with the fact that Defendant appeared more coherent and alert at yesterday's hearing, suggests that he understands the import of his conflicts waiver. Defense counsel also revealed, and Defendant confirmed, that in the past Defendant entered three separate guilty pleas in other criminal cases involving narcotics charges. Defendant is therefore personally familiar with the consequences of entering a guilty plea.

In addition, the Undersigned also believes that Defendant's consultations with independent Jamaican criminal defense counsel are especially important. Those consultations (with two separate lawyers) generated legal advice regarding the consequences of agreeing to extradition and pleading guilty. Based on those consultations with independent criminal defense counsel, who provided advice about the

---

advisors) during that hearing with the district court because he had not reviewed the transcript from the first *Garcia* hearing, did not recall specifically what had been said and did not then realize that defense counsel's representation was incorrect (and was therefore a significant misrepresentation).

plea before Defendant ever met Mr. Ferguson, Defendant decided to accept responsibility and to serve a prison sentence if the District Court chooses to sentence him to prison. This fact significantly reduces the likelihood that any meaningful defense counsel conflict would ever materialize through Mr. Ferguson's simultaneous representation of Davidson and his co-defendant (for Rule 35 purposes). I am therefore no longer persuaded that accepting Defendant's waiver of conflict-free counsel is inappropriate.

Had Mr. Ferguson candidly and quickly and simply acknowledged his misstatement to Judge Graham, then this Order is not the type I would have entered. But Mr. Ferguson did not do that. Instead, he seemed completely unfazed by the fact that he misstated a significant issue to Judge Graham. He appeared to be completely untroubled by his false statement about having explained all the factors he mentioned to Judge Graham to me at the first *Garcia* hearing. Instead, his basic position was that he advised me about several *other* factors, as if that somehow excused the misstatement about a factor he now concedes is significant.

Making a false statement to a judge is rarely a scenario leading to an automatic classification as a "no-big-deal" situation. In the current case, of course, the issue underlying Mr. Ferguson's misstatement turned out to be **the most significant issue** concerning the question of whether Mr. Ferguson had an actual or potential conflict and whether the Court should accept Defendant Davidson's waiver. And the factor which the Court deems to be the second most important – that the Codefendant had *already* earned his Rule 35 benefit and did not need to cooperate against Davidson in order to persuade the government to file a Rule 35 motion – was not clearly explained to me at the first hearing. In fact, a significantly contrary position was told to me: Mr. Ferguson advised

10

me then that the Government would file the Rule 35 motion in Gardiner's favor "after the conclusion of Mr. Davidson's prosecution." (DE# 906. 8:23-25).  And Mr. Ferguson explained that Mr. Gardiner's Rule 35 "is not dependent **solely** on what happens with Danny Davidson," and also confirmed that "the government has deferred filing the Rule 35 pending the disposition of this case." (*Id.* at 9: 7-12) (emphasis supplied).

Nevertheless, the Court is now aware of additional and/or different and/or new circumstances concerning Davidson.  For all of these reasons, my previous order (DE# 904) is hereby **VACATED** to the extent that the Court characterized Defendant's waiver as not being knowing and intelligent and refused to accept the waiver.  The Court now concludes that Defendant's waiver was knowing, voluntary, and intelligent, and the Court **ACCEPTS** the waiver.

**DONE AND ORDERED**, in Chambers, in Miami, Florida, this 22nd day of July, 2011.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Donald L. Graham
All counsel of record